[Cite as *Apt v. Apt*, 2013-Ohio-619.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

CAROL F. APT                                    :
                                                :        Appellate Case No. 25410
            Plaintiff-Appellee                  :
                                                :        Trial Court Case No. 93-DR-1679
v.                                              :
                                                :
SCOTT D. APT                                    :        (Civil Appeal from Common Pleas
                                                :         Court, Domestic Relations)
            Defendant-Appellant                 :
                                                :

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of February, 2013.

. . . . . . . . . .

L. ANTHONY LUSH, Atty. Reg. #0046565, Rogers & Greenberg, LLP, 2160 Kettering Tower, Dayton, Ohio 45423-1001
            Attorney for Plaintiff-Appellee

JAMES R. KIRKLAND, Atty. Reg. #0009731, 130 West Second Street, Suite 840, Dayton, Ohio 45402
            Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1}   Scott Apt challenges a domestic relations court's decision not to terminate or

modify the obligation imposed on him by an agreed order to maintain a life-insurance policy

benefitting Carol Apt, his former wife. He also challenges the court's decision not to order Carol to pay part of the policy's premiums. The court did not abuse its discretion, so we affirm.

## I. Background

{¶ 2}    In 1994, Carol Apt and Scott Apt were divorced. In the divorce decree, Scott was ordered to pay Carol $1,500 each month as spousal support. To secure the spousal-support obligation, Scott was also ordered to maintain a life-insurance policy of $100,000 that named Carol as beneficiary. A provision in the decree provides that the domestic relations court retains jurisdiction over spousal support.

{¶ 3}    Scott satisfied the life-insurance obligation with a policy that he had purchased in 1989 that has a face value of $100,000 and names Carol as the beneficiary. It is a 10-year renewable term to age 95 policy with a premium-change provision. During the initial 10-year term, the yearly premium was $618. For the next 10-year term, the yearly premium jumped to $3,945. In 2009, the amount jumped to $10,265. And in each succeeding year the premium jumps an average of 11% with the premium for the final year (2026) being $58,164.

{¶ 4}    In 2004, the parties signed, and the domestic relations court entered, an agreed order that terminated Scott's obligation to make monthly spousal-support payments "in exchange for a lump sum buyout of $50,000 payable from [Scott] to [Carol] * * * and the maintenance of a life insurance policy by [Scott] on [his] life for his lifetime with [Carol] as the irrevocable beneficiary in the death benefit amount of $50,000." (Emphasis sic.)   (July 29, 2004 AGREED ORDER). The order also contains a provision that vacates the trial court's continuing jurisdiction over spousal support. Scott maintained his $100,000 policy.

{¶ 5}    In 2009, Scott moved to terminate or modify the agreed-order provision that obligates him to maintain a life-insurance policy. He claimed that circumstances had changed–the annual premiums on that policy had increased significantly and he could no longer afford them. He could not purchase a new policy because he was uninsurable, having suffered a stroke in 2003. A hearing was held before a magistrate.[1] The magistrate concluded that Scott failed to show that a change in financial circumstances had occurred since the agreed order. The domestic relations court agreed and overruled Scott's motion to terminate or modify his life-insurance obligation. Scott's motion also asked the court to order Carol to reimburse him for part of the premiums he has paid. He argued that since she is receiving a larger benefit than he is obligated to provide she should pay the extra. The court overruled this part of the motion too.

{¶ 6}    Scott appealed.

## II. Review of the Errors Alleged

{¶ 7}    Scott assigns four errors to the domestic relations court. The first three challenge the court's decision not to terminate or modify his life-insurance obligation. The fourth assignment of error challenges the court's decision not to order Carol to reimburse Scott for part of the life-insurance premiums. Whether to terminate or modify the agreed order with respect to the life-insurance obligation and whether to order Carol to reimburse Scott

---

[1]The hearing was held on remand after we reversed the court's original judgment. The domestic relations court had previously concluded, based on the agreed order's provision vacating its spousal-support jurisdiction, that it did not have jurisdiction to modify Scott's life-insurance obligation. On appeal, we said that the provision vacating the domestic relations court's continuing jurisdiction over spousal support was a "nullity." *Apt v. Apt*, 192 Ohio App.3d 102, 2011-Ohio-380, 947 N.E.2d 1317, ¶ 16 (2d Dist.). Because a court does not have the power to "vacate" a continuing-jurisdiction order in a decree of divorce, *id.* at ¶ 14, we held that "[t]he domestic relations court erred in finding that, having terminated Scott's obligation to pay periodic spousal support, the court likewise lacks jurisdiction to modify his related obligation to maintain a policy of life insurance for Carol's benefit." *Id.* at ¶ 15.

were matters within the domestic relations court's discretion to decide. We generally review decisions in domestic relations cases under an "abuse of discretion" standard. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). An abuse of discretion implies that the court's attitude was "unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). In this case our focus is whether the decision was unreasonable. A decision is unreasonable if it is not supported by a sound reasoning process. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14.

### A. The life-insurance obligation

{¶ 8}   In a divorce case, a court may modify a spousal-support order only if it reserved jurisdiction over the matter and the circumstances of either party have changed. R.C. 3105.18(E)(1). Such a change "includes * * * any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses * * *." R.C. 3105.18(F)(1). The change must be "substantial" and must "make[] the existing award no longer reasonable and appropriate." R.C. 3105.18(F)(1)(a). Also, the change must be something that "was not taken into account by the parties or the court as a basis for the existing award when it was established or last modified * * *." R.C. 3105.18(F)(1)(b). Finally, "[i]n determining whether to modify an existing order for spousal support, the court shall consider any purpose expressed in the initial order or award and enforce any voluntary agreement of the parties." R.C. 3105.18(F)(2).

{¶ 9}   In the third assignment of error, Scott asserts that his poor health makes it is impossible for him to obtain a $50,000 life-insurance policy, and he argues that "[t]he cost to maintain the policy is overly burdensome for an elderly disabled person." Scott suffered a

stroke in December 2003, though he worked in his veterinary practice until 2005. He testified that the stroke affected the left side of his body–affecting his face, speech, and vision and paralyzing his left hand and foot. He said that, as a result of the stroke, he has had surgical procedures on his eyes for a blocked retina vessel and cataracts and a procedure to open up his carotid artery, participates in physical therapy twice a week, and is unable to drive. Scott also said that he has stage-three kidney disease. He claimed at the hearing that his living expenses, his healthcare expenses, and the life-insurance premium exceed his yearly income by $28,000.

{¶ 10} The magistrate determined that the last spousal-support modification was made by the 2004 agreed order. It is Scott's burden, said the magistrate, to present evidence of his financial circumstance in 2004 and in 2011 that proves a substantial change occurred that was not contemplated in 2004. The magistrate concluded that Scott failed to present sufficient evidence to find a change in his financial circumstances. The magistrate said that it could not be determined whether Scott's financial circumstances had changed because he did not present information about his investments–his assets and financial-account balances–for 2004 or 2011.

{¶ 11} After reviewing the evidence, the domestic relations court agreed with the magistrate's conclusion "that a change in circumstances has not occurred since the July 2004 order of support." (Sept. 11, 2012 DECISION AND JUDGMENT, at 5). The court pointed out that, when the life-insurance policy was issued, it included a schedule showing that the premiums would rise significantly. So when Scott signed the Agreed Order, said the court, he "knew or should have known the consequence of these provisions." (*Id*. at 4). The court also found that the conditions contributing to Scott's poor health "existed at the time the Agreed

Order was filed." (*Id*. at 4-5). Scott, said the court, "cannot now claim the termination of the lifetime support obligation negated the requirement to maintain a life insurance policy." (*Id*. at 5).

**{¶ 12}** We conclude the trial court's lack of change-in-circumstance finding was not an abuse of discretion.

**{¶ 13}** In the first assignment of error, Scott argues that "[t]here is no equitable reason why the insurance policy should continue to exist because the spousal support obligation has been satisfied." And in the second assignment of error, he argues that "[t]he Trial Court made no finding of why insurance is necessary when no support obligation exists." We find no merit in either argument.

**{¶ 14}** In the spousal-support context, life insurance is often used to secure payments. But in the agreed order life insurance is a contractual matter. As the trial court noted, Scott is contractually obligated to maintain the life-insurance policy:

> The Agreed Order is a contract wherein the parties bargained for and received
>
> mutual benefits and obligations. In exchange for termination of his obligation
>
> for lifetime spousal support of $1,500 per month, [Scott] agreed to give [Carol]
>
> a lump sum payment of $50,000 <u>and</u> maintain a life insurance policy of
>
> $50,000. [Carol] in turn willingly gave up the $1,500 lifetime award in
>
> exchange for the lump sum award and the continuing life insurance policy. The
>
> bargain was struck voluntarily by both parties.

(Emphasis sic.) (*Id*. at 5). The court concluded that "[t]he parties had ample opportunity to resolve any question or concern regarding the replacement policy or for that matter, explore

other solutions to the insurance policy issue." (*Id.* at 6). Referring to Scott, the court said, "Where, as here, a party may have agreed to a bad 'financial' deal–it remains an agreement." (*Id.*).

{¶ 15}   Finally, we note that the trial court found that Scott could convert his existing life-insurance policy to a $50,000 policy. For example, said the court, the policy could have been converted to a whole-life policy or to an interest-sensitive policy. Either of these options would reduce the premiums significantly. Indeed, the magistrate noted that converting the policy would reduce Scott's premium payments by almost half. Scott's obligation, said the court, requires only that if he dies before Carol, she receive $50,000. Scott does not dispute that these options exist.

{¶ 16}   We cannot say that the domestic relations court abused its discretion by deciding not to modify Scott's life-insurance obligation. Scott knew his health could decline and reduce his income; he voluntarily agreed to the obligation; and he could ameliorate the obligation's financial burden by converting his existing policy.

{¶ 17}   The first, second, and third assignments of error are overruled.

### B. Partial Reimbursement of Premiums

{¶ 18}   The fourth assignment of error asserts that "[n]o refund has been made to Appellant for the significant premium payments made which benefit Appellee." In light of the fact that Scott could have converted his existing life-insurance policy to a $50,000 policy, we cannot say that the trial court abused its discretion by not ordering Carol to pay part of the premiums.

{¶ 19}   The fourth assignment of error is overruled.

**{¶ 20}** Finally, we note that oral argument was held on February 5, 2013. On February 13, 2013, Appellee filed a "Notice by Appellee of Non-Service of Reply Brief by Appellant and Request for Appropriate Relief." Given our disposition of the assignments of error, we determine that request is moot.

**{¶ 21}** The domestic relations court's judgment is affirmed.

. . . . . . . . . . . . .

FAIN, P.J. and FROELICH, J., concur.


Copies mailed to:

L. Anthony Lush
James R. Kirkland
Hon. Denise L. Cross