[Cite as *Ogle v. Ogle*, 2018-Ohio-5141.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kathleen H. Ogle, | : | |
| Plaintiff-Appellant, | : | No. 17AP-560 |
| | | (C.P.C. No. 08DR-3733) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Brian H. Ogle, | : | |
| Defendant-Appellee. | : | |

---

D E C I S I O N

Rendered on December 20, 2018

---

**On brief**: *The Nigh Law Group, LLC*, and *Joseph A. Nigh*, for appellant.

**On brief**: *Wolinetz & Horvath*, and *Barry Wolinetz*, for appellee.

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

BROWN, P.J.

{¶ 1} This is an appeal by plaintiff-appellant, Kathleen H. Ogle, from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, overruling appellant's objections to a magistrate's decision modifying the spousal support obligation of defendant-appellee, Brian H. Ogle.

{¶ 2} The following background facts are drawn primarily from the magistrate's decision rendered on February 3, 2017. Appellant and appellee were married on September 25, 1982. Appellant filed a complaint for legal separation on September 24, 2008. The parties had two children, both of whom were emancipated at the time of the divorce proceedings. Appellant's complaint sought temporary and permanent spousal

support, an equitable distribution of the marital assets, and an order that appellee share in the payment of all marital debts. On December 10, 2008, the trial court issued temporary orders.

{¶ 3} On January 18, 2011, the parties entered into a decree of divorce. The decree required appellee to pay permanent spousal support to appellant in the amount of $6,500 per month, as well as 50 percent of his net annual bonuses for years 2011 through 2014. During the marriage, appellee was employed by Battelle Memorial Institute ("Battelle"), and the trial court entered a qualified domestic relations order ("QDRO") with respect to appellee's "Battelle Employees Savings Plan." The spousal support was based on appellant's imputed gross annual income of $25,000 and appellee's annual gross income of $204,552.

{¶ 4} Subsequent to the divorce, appellant obtained full-time employment earning approximately the amount imputed to her at the time of the divorce. Appellant and appellee had no communication with each other from the time of the divorce through 2015. Appellee remarried on July 18, 2015; shortly thereafter, his new spouse was diagnosed with cancer and she passed away in July 2016.

{¶ 5} In 2015, appellee served in the position of vice president of facilities and security operations at Battelle. In May 2015, Battelle made a management decision to downsize its organization. As part of that effort, the company implemented a program offering two options to different segments of its employees: (1) a voluntary retirement option ("VRO"), and (2) a voluntary separation program ("VSP"). Appellee was part of a group of employees who qualified for the VRO, which included certain enhanced benefits. According to testimony at the hearing before the magistrate, "the choice was given to 400 'targeted' employees to take the option or to risk being terminated without the enhanced benefit package." (Mag. Decision at 2.)

{¶ 6} On December 17, 2015, appellee filed a motion to modify spousal support. In the accompanying memorandum in support, appellee argued in part he had elected to participate in Battelle's VRO program and had announced his retirement.

{¶ 7} Following his acceptance of the VRO, appellee's last day of work at Battelle was February 29, 2016, and his salary ended on that date. Appellee's pension, enhanced by the VRO provisions, is $6,359.72 per month, and appellant's interest in that pension,

pursuant to the QDRO, is $1,860.72 per month. Appellee "nets approximately $5,500.00 per month." (Mag. Decision at 3.)

{¶ 8} In 2016, appellee performed some personal consulting services after his employment with Battelle ended; appellee earned approximately $25,000 for the consulting work, which the magistrate found was completed in 2016. Appellee also sold two properties in 2016 and netted a profit from both sales.

{¶ 9} On April 26, 2016, appellant filed a motion for contempt and sanctions against appellee. Appellant asserted in the motion that appellee had failed to pay court-ordered spousal support for April 2016.

{¶ 10} On January 18, 2017, a magistrate of the trial court conducted a hearing on appellee's motion to modify spousal support as well as on appellant's motion for contempt. On February 3, 2017, the magistrate issued a decision on the motions, finding appellee acted reasonably in accepting the VRO from his employer based on the risk he might lose his employment due to downsizing. The magistrate granted a downward modification of spousal support, ordering appellee to pay spousal support in the amount of $1,500 per month. The magistrate also found appellee in contempt for failure to make spousal support payments, and further determined appellant was entitled to attorney fees in the amount of $3,500 to prosecute the contempt motion.

{¶ 11} On February 16, 2017, appellant filed objections to the magistrate's decision. On May 3, 2017, appellant filed a supplemental objection. On June 16, 2017, appellee filed a memorandum in opposition to appellant's objections to the magistrate's decision.

{¶ 12} On August 1, 2017, the trial court issued a decision and entry overruling appellant's objections. With respect to the issue of spousal support modification, the court found no evidence suggesting the parties contemplated appellee's early retirement, and the evidence and testimony established appellee risked losing his position at Battelle with no benefits or severance pay if he failed to timely accept the VRO. The trial court therefore found it was reasonable for appellee to voluntarily retire from Battelle "for legitimate economic reasons," and "not merely to avoid his support obligation." (Decision & Entry at 5.)

{¶ 13} On appeal, appellant sets forth the following six assignments of error for this court's review:

[I.] The Trial Court erred in modifying Appellee's spousal support obligations.

[II.] The Trial Court erred in considering testimony not given under oath.

[III.] The Trial Court erred by ruling on evidentiary objections that were to the detriment of the Appellant.

[IV.] The Trial Court erred in not proceeding with Appellant's motion to find Appellee in contempt prior to the hearing on Appellee's motion to modify spousal support.

[V.] The Trial Court erred in not conducting a Brown test and/or removing Appellee's counsel once it was clear he was a fact witness.

[VI.] The Trial Court erred in only awarding [Appellant] $3,500 in attorney fees.

{¶ 14} Under the first assignment of error, appellant argues the trial court erred in modifying appellee's spousal support obligation. More specifically, appellant contends the trial court erred in: (1) modifying a permanent spousal support award after five years, (2) considering the "flawed" testimony of Brian Wilson, CPA, (3) failing to consider all sources of appellee's income and/or potential income, (4) finding appellee's early retirement was reasonable and neglecting to take into consideration the impact of the early retirement on appellant's benefits, (5) not correctly relying on the spousal support factors in calculating appellee's modified obligations, and (6) not considering appellant's budget.

{¶ 15} In general, a trial court is "afforded wide latitude in deciding spousal support issues." *Piliero v. Piliero,* 10th Dist. No. 10AP-1142, 2012-Ohio-1153, ¶ 20, citing *Grosz v. Grosz,* 10th Dist. No. 04AP-716, 2005-Ohio-985, ¶ 8. Further, "[a]n appellate court reviews the modification of spousal support under an abuse of discretion standard." *Id.*

{¶ 16} R.C. 3105.18(C) states:

(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is

payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶ 17} Appellant first argues the trial court erred in modifying a permanent spousal support award after five years, asserting the court abused its discretion in failing to consider the purpose and intent of the parties as set forth in their agreed judgment entry/decree of divorce. Appellant notes, at the time the parties ended their marriage, it was agreed appellee would pay a permanent award of spousal support in the amount of $6,500 per month; however, after paying support for five years, appellee took an early retirement.

{¶ 18} Under Ohio law, "a court may modify a spousal-support order only if it reserved jurisdiction over the matter and the circumstances of either party have changed." *Apt v. Apt*, 2d Dist. No. 25410, 2013-Ohio-619, ¶ 8, citing R.C. 3105.18(E)(1). Such a change in circumstances " 'includes * * * any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses.' " *Id.,* quoting R.C. 3105.18(F)(1). Further, "[t]he change must be 'substantial' and must 'make[] the existing award no longer reasonable and appropriate.' " *Id.,* quoting R.C. 3105.18(F)(1)(a). The change must also "be something that 'was not taken into account by the parties or the court as a basis for the existing award when it was established or last modified.' " *Id.*, quoting R.C. 3105.18(F)(1)(b). Finally, in considering whether to modify an existing order of spousal support, the court " 'shall consider any purpose expressed in the initial order or award and enforce any voluntary agreement of the parties.' " *Id.*, quoting R.C. 3105.18(F)(2).

{¶ 19} In her objections to the magistrate's decision, appellant asserted (as she does on appeal) the parties had previously agreed for appellee to pay $6,500 per month permanently and the magistrate failed to consider the purpose of the initial order. In addressing this objection, the trial court noted the parties' agreed judgment entry/decree of divorce provided the trial court would retain jurisdiction over the issue of spousal support. In light of that language, the trial court found appellant's "proposition that the term or amount of permanent spousal support must never be altered" to be in "direct contradiction to the terms of the Divorce Decree." (Decision & Entry at 4.)

{¶ 20} On review, we find unpersuasive appellant's contention that the trial court was without authority to modify spousal support after only five years, or that it failed to consider the purpose of the initial order agreeing to permanent support. As observed by the trial court, the parties' agreed judgment entry/decree of divorce states in part: "Said spousal support obligation shall be permanent in nature, however, the Court shall retain continuing jurisdiction over the issue of spousal support." (Agreed Jgmt. Entry Decree of Divorce at 2-3.) Thus, while the decree ordered appellee to pay "permanent" spousal support, the trial court "retained jurisdiction to modify the spousal support award, allowing either party to seek modification upon proof of a change in circumstances." *Wilder v. Wilder,* 10th Dist. No. 08AP-699, 2009-Ohio-755, ¶ 2. *See also Eva v. Eva*, 11th Dist. No. 2007-P-0062, 2008-Ohio-6986, ¶ 32 ("the fact that the trial court retained jurisdiction to modify the award suggests that the award may not be 'permanent,' in that the trial court has jurisdiction to modify, or eliminate, the award should there be an appropriate change of circumstances pursuant to R.C. 3105.18(F)").

{¶ 21} We therefore consider appellant's more substantive arguments with respect to the issue of modification of spousal support, including whether the record supports a finding of change of circumstances. Appellant's primary assertion is the trial court erred in finding appellee's early retirement to be reasonable, and in failing to take into consideration the impact of such retirement on her retirement benefits. Appellant cites appellee's acknowledgement that his normal retirement age was 65, and argues the evidence indicates appellee did not attempt to contact appellant about the VRO option until six months after it was announced to employees in May 2015.

{¶ 22} Under Ohio law, "[a]n early retirement can be considered an involuntary decrease in a person's salary where the party demonstrates that it was economically sound to take an early retirement." *Tissue v. Tissue*, 8th Dist. No. 83708, 2004-Ohio-5968, ¶ 21, citing *Roach v. Roach*, 61 Ohio App.3d 315, 319 (8th Dist.1989). By contrast, "if a party retires with the intent of defeating the spousal support obligation, the retirement is considered 'voluntary underemployment,' and the party's pre-retirement income is attributed to that party." *Friesen v. Friesen,* 10th Dist. No. 07AP-110, 2008-Ohio-952, ¶ 42. If the evidence does not demonstrate "a purpose to escape an obligation of spousal support and the decision appears reasonable under the circumstances, then the trial court

should not impute additional income to the retired party." *Chepp v. Chepp*, 2d Dist. No. 2008 CA 98, 2009-Ohio-6388, ¶ 11, citing *Reed v. Reed*, 2d Dist. No. 2000 CA 81 (Feb. 16, 2001).

{¶ 23} As noted under the facts, based on the evidence presented at the hearing, the magistrate determined appellee "acted reasonably in exercising the option offered by Battelle." (Mag. Decision at 5.) In addressing appellant's objection to this finding, the trial court found the evidence and testimony established that appellee "risked losing his position with no benefits or severance pay if he failed to timely accept the VRO." The trial court thus held "it was reasonable for [appellee] to voluntarily retire from his position at Battelle for legitimate economic reasons—not merely to avoid his support obligation." (Decision & Entry at 5.)

{¶ 24} During the hearing before the magistrate, Staci Palmer, the senior director of human resources at Battelle, testified on behalf of appellee with respect to the company's implementation of the VRO program. Palmer described the VRO program as designed to "target[] retirement eligible individuals." (Tr. at 7.) Battelle employees had no involvement in the implementation of the program; rather, the VRO was the result of a decision by management to downsize or reduce the workforce. Palmer testified that Battelle "had gone through several iterations of reductions over a period of about * * * five years," and that the company "need[ed] to pull out additional costs from the organization and * * * to revitalize the workforce and contemporize the skills." (Tr. at 10.)

{¶ 25} According to Palmer, the VRO contained "enhanced retirement options to the extent they were eligible for the program and would be able to exit out on those terms that we offered to them that were more generous than if they were to simply retire at that time." (Tr. at 11.) The enhancements included an additional two years of service, and one year of severance pay. Palmer further explained that the VRO program was constructed "such that it needed to be a voluntary decision. But we did model it after a specific number of employees that we wanted to target in total in terms of the exits we needed to obtain, and the total cost reductions we needed to obtain." (Tr. at 11.)

{¶ 26} At the time the VRO program was implemented in September 2015, Battelle had approximately 5,600 employees, and the target reduction number for the VRO and VSP programs was 400. Battelle sent packets to employees eligible to participate in the

VRO, and acceptance of the VRO was on a "first come, first serve[]" basis.  (Tr. at 17.) Palmer testified that an employee presented with the option did not have knowledge whether his or her position would be retained.

{¶ 27} The company met its benchmark, as more than 300 individuals accepted the VRO, and approximately 75 individuals accepted the VSP. Palmer agreed the enhancements under the VRO program constituted a significant benefit from the existing retirement benefits.  According to Palmer, the program was modeled "such that we thought it would incentivize people to accept it." (Tr. at 25.)

{¶ 28} Appellee testified as to his decision to accept the VRO.  According to appellee, "[t]here was a lot of uncertainty at the time at Battelle about how many people would be let go in this reduction in force." (Tr. at 69.)  He stated that over 30 percent of the staff in his department "were strongly considering this and ultimately made the decision to take advantage of the VRO because of the risk of staying."  (Tr. at 69.) Appellee further testified: "when I weighed the options, the analysis of what it would mean if I took advantage of it, what the risk would be if I stayed, I ultimately decided that I needed to accept this offer.  It was one time and it was too risky not to accept it." (Tr. at 69.)  After accepting the VRO, appellee's last day of employment was February 28, 2016. Appellee testified that it was his intention to remain retired.

{¶ 29} As noted, an early retirement can be considered an involuntary decrease in a party's wages when that party demonstrates it was economically sound to take such retirement. *Tissue* at ¶ 21.  On review, the record supports the trial court's determination that it was reasonable for appellee to voluntarily retire from his position at Battelle "for legitimate economic reasons" rather than to "avoid his support obligation." (Decision & Entry at 5.)  As reflected above, appellee's early retirement was brought about due to Battelle's decision to downsize its workforce through offering the VRO.  Appellee was one of a number of employees offered the retirement option.  According to the testimony of Palmer, appellee and other Battelle employees faced the uncertainty and/or risk of losing their jobs if they declined to participate in the program, and over 300 Battelle employees ultimately accepted the VRO.  In addressing this issue, the magistrate noted that, although the VRO "was, in fact, an 'option,' the manner in which it was presented, including the time limit for acceptance, the targeted group based on age and rank, and the

clear ultimatum that failure to accept the option could well result in termination without the listed incentives, combined to make it appear as the best option for employees of [appellee's] age and position." (Mag. Decision at 5.) Under the facts and circumstances presented, the record supports a determination that the decision to accept the VRO was based on reasonable factors other than avoidance of support. (Mag. Decision at 5.)

{¶ 30} In the event a "substantial change in circumstances has occurred, the trial court must then examine the existing order in light of the changed circumstances, considering whether spousal support is still appropriate and reasonable and, if so, in what amount." *Bishop v. Bishop*, 2d Dist. No. 26397, 2015-Ohio-2711, ¶ 21. Here, at the time of the divorce decree, appellee was working and earning an annual gross base income of $204,552. On accepting the VRO and retiring from Battelle, appellee's annual income from his pension benefits was approximately $76,300. We have previously noted that the parties' decree provided the trial court with continuing jurisdiction over spousal support. In light of the "reduction in income," the magistrate and trial court did not err in concluding a substantial change of circumstances occurred warranting a reduction in appellee's spousal support obligation. *Id.* at ¶ 25.

{¶ 31} As part of her first assignment of error, appellant challenges the income calculation of appellee's witness, Brian Russell, a certified public accountant. Appellant asserts the trial court's reliance on the testimony of Russell was flawed because the underlying information he relied on was inaccurate. Specifically, appellant argues appellee acknowledged not informing Russell that he earned $24,000 in 2016 from consulting work he performed.

{¶ 32} However, as noted by the trial court, the magistrate acknowledged appellee received payment for a one-time consulting job, and the magistrate further cited appellee's testimony that he had no other consulting jobs planned, nor did he have plans to continue working. On review, the trial court did not abuse its discretion in finding no error with respect to the magistrate's consideration of Russell's testimony.

{¶ 33} Appellant further argues the magistrate erred in failing to consider all of appellee's potential income. Appellant cites the evaluation of Dr. Richard Oestreich, a vocational expert, who opined appellee could earn $83,000 annually in a new position. Appellant maintains it was error for the trial court to not include this imputed income in

addition to appellee's annual retirement figure of $76,317 (i.e., appellant contends the trial court should have combined imputed income of $83,000 with appellee's actual annual retirement income of $76,317 for a minimum imputed income of $159,317 annually).

{¶ 34} During the hearing, Russell was questioned about Dr. Oestreich's opinion, based on a vocational assessment, that appellee could earn approximately $83,000 annually. Russell responded appellee was "at a reasonable retirement age and is at a full benefit that is similar to what his earnings ability would be." (Tr. at 46.) Russell opined it would not be "reasonable to add that income on top of a full income retirement benefit." (Tr. at 47.)

{¶ 35} The magistrate determined it would not be reasonable to impute to appellee an income figure "assuming full-time employment as set forth in Mr. Oestreich's report." (Mag. Decision at 8.) In addressing appellant's objection to this finding, the trial court held the magistrate considered all appropriate sources of income for both parties, including appellee's one source of income, i.e., "his pension." The trial court concluded appellant's position that Dr. Oestreich's calculation of imputed income for appellee should be added to his pension was "not supported by statute or case law." (Decision & Entry at 8.)

{¶ 36} We find no abuse of discretion by the trial court's failure to impute additional income to appellant following his retirement. In general, "[b]efore imputing income to a retired party, the trial court must make a finding that the retired party's decision to retire was based on an intent to defeat an award of spousal support." *Perry v. Perry,* 2d Dist. No. 07-CA-11, 2008-Ohio-1315, ¶ 25. However, "[i]f there is no evidence of a purpose to escape an obligation of spousal support and the decision to retire appears reasonable under the circumstances, then the trial court should not impute additional income to the retired party." *Id.* *See also Reed* (if spouse's intent in choosing early retirement was not to avoid support obligations, trial court should treat retirement "as a change of circumstances, should not impute additional income to him, and should adjust his support obligations accordingly"); *Clemens v. Clemens,* 2d Dist. No. 07-CA-73, 2008-Ohio-4730, ¶ 55 (trial court was not required to impute income where there was no evidence spouse took early retirement to avoid support obligations).

{¶ 37} We have previously found the record supports a determination that appellee's decision to choose early retirement was not to avoid support obligations. At the time of the hearing, appellee had accepted the VRO and retired, and there was evidence to support a finding that his intent was not to return to the workforce. Based on the facts and circumstances presented, the trial court acted within its discretion not to impute $83,000 of additional annual income to appellee, and we will not disturb that determination on appeal.

{¶ 38} Appellant's further contention that the trial court failed to properly consider the spousal support factors is not persuasive. A review of the decisions of the magistrate and trial court reveals a detailed analysis and proper consideration of those statutory factors. To the extent appellant argues the trial court should have utilized a Thompson Reuters 2017 FinPlan, the record fails to indicate that such evidence was presented by appellant during the hearing before the magistrate. Rather, appellant first raised the issue of a FinPlan analysis as part of her supplemental objection to the magistrate's decision.

{¶ 39} Appellant also asserts the trial court erred in not considering her budget. More specifically, appellant challenges a finding by the magistrate that "[t]he Court was not presented with asset/liability summaries from either party." (Mag. Decision at 7.) Appellant notes she submitted a sworn affidavit on October 24, 2016 listing her current income and expenses from those at the time of the last order.

{¶ 40} In addressing this objection, the trial court found the fact the magistrate did not reference appellant's "before and after" affidavit (filed October 24, 2016) "does not mean it was not considered." The trial court noted that appellant "submitted an affidavit which detailed her expenses and had an opportunity to testify regarding her budget and expenses at the hearing." The trial court also agreed with the magistrate's finding that "neither party presented an 'asset/liability summary.' " (Decision & Entry at 8.)

{¶ 41} Notwithstanding appellant's characterization of her affidavit at issue, the magistrate's finding that "[t]he Court was not presented with asset/liability summaries from either party" appears to be accurate. (Mag. Decision at 7.) Further, as observed by the trial court, there is no indication the magistrate did not consider the affidavit submitted by appellant. We find no error by the trial court in overruling that objection.

{¶ 42} Based on the foregoing, appellant's first assignment of error is overruled.

{¶ 43} Under the second assignment of error, appellant contends the trial court erred in considering testimony not given under oath. Specifically, appellant argues the magistrate failed to place a key witness, Palmer, under oath during a hearing on October 25, 2016, and that such failure was in contravention of R.C. 2317.30.

{¶ 44} By way of background, prior to the evidentiary hearing on January 18, 2017, regarding the motions to modify spousal support and for contempt, the magistrate conducted a preliminary hearing to clarify issues regarding appellee's retirement from Battelle and the company's implementation of the VRO. Palmer, who subsequently testified under oath at the January 2017 hearing, was in attendance during the October 2016 hearing. During that hearing, Palmer, who was not under oath, answered questions from the parties, as well as the magistrate, regarding the VRO. In her objections to the magistrate's decision, appellant asserted the magistrate erred in considering testimony during that preliminary hearing when such testimony was not given under oath.

{¶ 45} In addressing this objection, the trial court noted that Palmer, during her later sworn testimony at the January 18, 2017 hearing, gave "detailed testimony regarding the circumstances of [appellee's] retirement," explaining "in detail the nature of the program in which [appellee] participated." (Decision & Entry at 9.) While recognizing that Palmer "had earlier made a series of unsworn statements on October 25, 2016, to the Magistrate and counsel regarding this same topic," the trial court held it was "not clear that the Magistrate considered unsworn statements since her Decision refers only to Ms. Palmer's 'testimony,' and the official court transcript does contain the essential elements of Ms. Palmer's testimony upon which the Magistrate and this Court rely." (Decision & Entry at 9.) Noting that a court "speaks through its decisions and journal entries," and that it was "clear * * * the earlier statements were repeated under oath by the subsequent sworn testimony given by Ms. Palmer," the trial court overruled the objection. (Decision & Entry at 9.)

{¶ 46} Appellant contends the magistrate erred in considering unsworn testimony in violation of R.C. 2317.30, which states: "Before testifying, a witness shall be sworn to testify the truth, the whole truth, and nothing but the truth." In general, "[t]he purpose of swearing or affirming a witness is two-fold: to impress upon the witness the solemnity of the event and the need to testify truthfully and to subject the witness to the penalties for

perjury if the testimony is proved to be false."  *In re Harris,* 10th Dist. No. 00AP-987 (Mar. 20, 2001).

{¶ 47} We initially note that, at the time the magistrate and counsel for both sides questioned Palmer during the preliminary hearing, no objection was raised regarding unsworn testimony.  Further, as noted by the trial court, there is nothing in the record to suggest the magistrate relied on unsworn statements in rendering a decision, i.e., the magistrate only cites to the sworn testimony of Palmer.  Nor does the record indicate Palmer's trial testimony was "substantially different" from any unsworn statements she made during the earlier hearing.  *In re Leonard, H.,* 6th Dist. No. L-00-1258 (Jan. 26, 2001) (no reversible error where "witness's testimony following the oath was not substantively different from the first time she took the stand").  Under these circumstances, we find no abuse of discretion by the trial court in overruling appellant's objection.

{¶ 48} Appellant's second assignment of error is not well-taken and is overruled.

{¶ 49} Under the third assignment of error, appellant asserts the trial court erred in ruling on evidentiary objections that were detrimental to her.  Specifically, appellant argues the trial court erred in precluding her the opportunity to: (1) cross-examine appellee regarding information he provided to the vocational expert, Dr. Oestreich, (2) obtain information about appellee's actions to reduce his monthly obligations as required by R.C. 3105.18(C), and (3) elicit testimony about false statements appellee made under oath that impacted his credibility.

{¶ 50} Appellant first contends the trial court erred in granting appellee's objection as to information provided to the vocational expert.  Appellant notes the parties stipulated to the admission at trial of a vocational evaluation performed by Dr. Oestreich on each of the parties.  Appellant argues the magistrate erred in refusing to allow her counsel to question appellee about information he provided the expert.

{¶ 51} A review of the record indicates counsel for appellant questioned appellee on cross-examination as to whether he informed Dr. Oestreich "that you had earned $24,000 in consulting income in 2016?"  (Tr. at 97.)  Counsel for appellee objected, arguing there was "no foundation that that would be relevant to Dr. Oestreich's report.

 * * * That is a vocational evaluation, not an income analysis." (Tr. at 97.) The magistrate sustained the objection.

{¶ 52} In her objections to the magistrate's decision, appellant argued, as she does on appeal, that the magistrate erred in denying her the opportunity to cross-examine appellee on this issue. The trial court overruled the objection, citing the fact that the magistrate "acknowledged [appellee] received pay for a one-time consulting job," and that the magistrate "went on to note that [appellee] testified that he had no other consulting jobs planned and had no plans to continue working." (Decision & Entry at 9.) The trial court further noted that the magistrate "was well aware that Dr. Oestreich was not informed about the consulting income and was fully informed in the circumstances about [appellee's] employment situation." (Decision & Entry at 9.) The court concluded appellant had "failed to cite any substantial right which was adversely impacted by the ruling." (Decision & Entry at 9.)

{¶ 53} We find no error with the trial court's determination. Evid.R. 103(A) states in part: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Further, "[t]he admission or exclusion of evidence by the trial court will not be reversed unless there has been a clear and prejudicial abuse of discretion." *Bungo v. Nowacki,* 8th Dist. No. 70024 (Aug. 29, 1996).

{¶ 54} Although the magistrate sustained an objection as to whether appellee told the vocational expert he had earned $24,000 in 2016, the record indicates appellee later acknowledged telling the expert he was not working for anyone. Thus, as reflected in the hearing testimony, the magistrate was aware Dr. Oestreich was not informed about the consulting work. Further, as noted by the trial court, the magistrate's decision includes findings that appellee "earned approximately $25,000 for * * * consulting work," that "[t]he consultation was completed in 2016," and appellee "does not have any other consultations scheduled." (Mag. Decision at 3.) Based on the record presented, appellant has not demonstrated prejudice as a result of the magistrate's evidentiary ruling.

{¶ 55} Appellant further contends the trial court erred in precluding her from obtaining information about appellee's actions to reduce his monthly obligations. Appellant notes that, during cross-examination of appellee, counsel for appellant inquired as to whether appellee asked his mortgage company to "reduce your mortgage payments

on your house because you were retiring?" (Tr. at 122.) The magistrate deemed the inquiry a "gratuitous question." (Tr. at 123.)

{¶ 56} In her objections to the magistrate's decision, appellant asserted the magistrate erred in precluding this inquiry. Appellant argued that such information was relevant pursuant to R.C. 3105.18(C)(1)(i), under which a trial court, in considering a spousal support award, is to consider "[t]he relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties."

{¶ 57} The trial court, in addressing appellant's objection, held in part: "If this objection has any relevance to the evaluation of factor [R.C.] 3105.18(C)(1)(i), [appellant] has failed to provide evidence or testimony which would so indicate, let alone support it." (Decision & Entry at 10.) Thus, the trial court deemed the inquiry to be of marginal relevance to the statutory factor at issue. We agree.

{¶ 58} Here, the inquiry appears to be directed at what steps could have been taken to reduce liabilities (as opposed to evidence of actual reductions), and we find no error with the trial court's relevancy determination. Further, to the extent such inquiry may have been relevant to the issue of the parties' assets and liabilities, our review of the record leads us to conclude the alleged error did not affect a substantial right of appellant.

{¶ 59} Appellant next contends the trial court erred in failing to permit her to elicit testimony about purported false statements appellee made under oath that impacted his credibility. Specifically, during cross-examination of appellee, counsel for appellant asked appellee if he met his second wife prior to the divorce. Appellee responded affirmatively. Counsel for appellant then asked appellee: "Okay. * * * [I]s it safe to say your relationship with her was one of the main factors, if not the main factor, in your divorce from [appellant]?" (Tr. at 88.) Appellee responded: "No." (Tr. at 88.) Counsel for appellee stated: "I was going to object before the no." (Tr. at 88.) The magistrate found the inquiry "irrelevant," at which point counsel for appellant stated: "I'll move on." (Tr. at 88.)

{¶ 60} In addressing this objection to the magistrate's decision, the trial court held in part: "[Appellant's] counsel's inquiry as to when [appellee] met his second wife was irrelevant, inappropriate, and immaterial to the analysis of [R.C.] 3105.18(C). * * * The Court finds that this line of questioning had no relevance to the matter under

consideration, and no error occurred when [appellant] was precluded from pursuing it." (Decision & Entry at 10.)

{¶ 61} On review, we find no error with the trial court's determination that the excluded evidence was not relevant to consideration of the factors under R.C. 3105.18(C), nor can appellant demonstrate the magistrate's exclusion affected a substantial right. The record indicates that counsel for appellant sought to question appellee regarding the timing (i.e., the beginning) of his relationship with his second wife. The magistrate, however, was aware of the fact appellee met his second wife when he was still married to appellant. Appellant provided testimony on this issue, and the magistrate noted in her decision that "[t]his case was particularly rancorous on the part of both parties," and that appellant's "bitterness about [appellee's] affair with the woman he would later marry had not really diminished since the divorce (as evidenced by the voice mail she left on [appellee's] telephone)." (Mag. Decision at 11.) Accordingly, the trial court did not abuse its discretion in overruling this objection.

{¶ 62} Appellant's third assignment of error is not well-taken and is overruled.

{¶ 63} Under the fourth assignment of error, appellant asserts the trial court erred in not proceeding to find appellee in contempt prior to the hearing on the motion to modify spousal support. Appellant argues she was prejudiced by the magistrate's decision to try the motions together; according to appellant, she could have used the money from the contempt hearing to finance experts to use in defense of the motion to modify spousal support.

{¶ 64} In addressing this objection, the trial court noted appellant filed her motion for contempt after appellee filed his motion to modify spousal support; further, appellant requested the motion for contempt be set for hearing when appellee's motion to modify spousal support was set to be heard. The trial court found appellant "has failed to supply any authority to convince the Court that her Motion should have been heard *before* [appellee's] Motion to Modify" and that "[t]raditionally, unless there is agreement to do otherwise, the Motion first filed is first heard." (Emphasis sic.) (Decision & Entry at 10.)

{¶ 65} We find no abuse of discretion by the trial court. As indicated by the trial court, appellee's motion to modify spousal support was filed (December 17, 2015) before appellant filed her motion for contempt (April 26, 2016). Moreover, appellant's motion

for contempt specifically "request[ed] that this matter be set for hearing before Magistrate Zand on June 1, 2016 when Defendant's <u>Motion to Modify Spousal Support</u> is set to be heard." (Emphasis sic.) (Plaintiff's Mot. for Contempt & Sanctions at 3.) Finally, as observed by appellee, there is no indication in the record that appellant requested bifurcation of the proceedings. Under the circumstances, the trial court did not err in overruling appellant's objection.

{¶ 66} Accordingly, appellant's fourth assignment of error is overruled.

{¶ 67} Under the fifth assignment of error, appellant asserts the trial court erred in not conducting a "*Brown test*" and/or removing appellee's counsel once it was clear he was going to be a fact witness during the hearing before the magistrate. Appellant argues the magistrate should have stopped the proceedings and ordered appellee to obtain new counsel once it was apparent that counsel would be providing testimony.

{¶ 68} By way of background, during cross-examination of appellee, counsel for appellant questioned him as to why he stopped making spousal support payments. During this exchange, appellant's attorney asked appellee: "Did you have any indication that you were permitted from the Court not to pay spousal support to [appellant]?" (Tr. at 109.) Appellee responded: "I was advised." (Tr. at 109.) At that point, counsel for appellee stated: "Don't talk about any privileged things." (Tr. at 109.)

{¶ 69} Later, during direct examination of appellant, counsel questioned her regarding an e-mail sent from appellee's counsel to appellant's counsel. Counsel for appellee objected on the basis that "[s]he is not the writer. She is not the recipient." (Tr. at 149.) In addressing the objection, the magistrate observed: "She is not the proper witness to lay the appropriate foundation for this exhibit." (Tr. at 149.) In response, counsel for appellant stated: "I can call [counsel for appellee] after I'm done with her." Counsel for appellee stated: "Please do." (Tr. at 149.)

{¶ 70} Following appellant's testimony, counsel for appellant stated: "I guess I have to call [appellee's counsel] to the stand." (Tr. at 177.) Counsel for appellant then questioned counsel for appellee as on cross-examination regarding Exhibit No. 23, an e-mail exchange between counsel for both sides regarding the failure of appellee to make a spousal support payment. More specifically, counsel for appellant questioned appellee's counsel about his e-mail statement that "[w]e are all in on our motion and the current

situation.  If the Court finds for us, there will be no contempt.  If they find against us, then we will have some issues to address."  (Tr. at 178.)  Counsel for appellee responded: "We had made your client an offer that she shouldn't have * * * refused, and she refused.  And so there was no need to negotiate anymore and we were all in, meaning that we were putting this in the hands of the Court to decide."  (Tr. at 179.)

{¶ 71} In her objections to the magistrate's decision, appellant argued the magistrate erred in failing to conduct the test set forth in *Brown v. Spectrum Networks, Inc.*, 180 Ohio App.3d 99, 2008-Ohio-6687 (1st Dist.), and/or failing to remove appellee's counsel once it was clear he was to be a witness.  In further support, appellant cited the provisions of Prof.Cond.R. 3.7(a), pertaining to situations in which a conflict may arise if counsel is called to testify at trial.

{¶ 72} Prof.Cond.R. 3.7 states:

> (a)  A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless one or more of the following applies:
>
> (1)  the testimony relates to an uncontested issue;
>
> (2)  the testimony relates to the nature and value of legal services rendered in the case;
>
> (3)  the disqualification of the lawyer would work *substantial* hardship on the client.

(Emphasis sic.)

{¶ 73} In *Brown,* the First District Court of Appeals held the "proper procedure for a trial court to follow in determining whether to disqualify an attorney who has been called to testify by the opposing party is for the court to (1) determine whether the attorney's testimony is admissible and (2) determine whether the attorney's testimony is necessary."  *Id.* at ¶ 15.  Further, "[u]nder the second part of this analysis, the court must decide whether the attorney's testimony is relevant and material to the issues being litigated and whether the testimony is unobtainable otherwise."  *Id.*  In the event the trial court "determines that the lawyer's testimony is admissible and necessary, the court must then determine whether any of the exceptions set forth under *Rule* 3.7 apply."  (Emphasis sic.)  *Id.*

{¶ 74} In addressing appellant's objection, the trial court held in part: "The mere fact that [appellee's] counsel objected to privileged conversations and to the potential testimony of a witness in the middle of a trial and then testified about those actions, fails to provide a sufficient basis for disqualification." (Decision & Entry at 12.) The court further found appellant failed to show that disqualification of appellee's attorney was "absolutely necessary when considered in conjunction with the substantial hardship which would be worked upon [appellee] who would be left without representation in the middle of a contested hearing." (Decision & Entry at 12.)

{¶ 75} At the outset, we recognize a trial court and/or magistrate may sua sponte raise the issue of disqualification. *Akron v. Carter*, 190 Ohio App.3d 420, 2010-Ohio-5462, ¶ 12 (9th Dist.). We note, however, although appellant argues the conflict should have been apparent to the magistrate during the hearing, the record fails to indicate appellant raised the issue of conflict of interest and/or disqualification during the proceedings before the magistrate, nor did counsel for appellant request the magistrate conduct a *Brown* test. In this respect, at the time counsel for appellant called counsel for appellee to testify as on cross-examination, there was no discussion on the record as to counsel's continued representation of appellee. Rather, appellant appears to have first raised the issue of disqualification and/or conflict of interest in her objections to the magistrate's decision.

{¶ 76} In general, "[d]isqualification of an attorney is a drastic measure that should not be taken unless absolutely necessary." *Gonzalez-Estrada v. Glancy,* 8th Dist. No. 104570, 2017-Ohio-538, ¶ 10, citing *Brown* at ¶ 11. Under Ohio law, "[d]isqualification is absolutely necessary only if 'real harm is likely to result from failing to [disqualify].' " *Carter* at ¶ 19, quoting *Puritas Metal Prods. v. Cole*, 9th Dist. No. 07CA009255, 2008-Ohio-4653, ¶ 28. In reviewing a trial court's decision whether to disqualify a party's counsel, this court applies "an abuse of discretion standard." *Glancy* at ¶ 10.

{¶ 77} As set forth above, the trial court found appellant failed to provide a sufficient basis for disqualification. Given the posture of the proceedings, we find no abuse of discretion by the trial court in overruling appellant's objection on the basis that disqualification "in the middle of a contested hearing" would have worked a substantial hardship on appellee. *See, e.g., Erie Air Conditioning & Heating, Inc. v. S.C. Co.,* 8th

Dist. No. 63216 (July 22, 1993) (no abuse of discretion by trial court in failing to grant motion to disqualify counsel made on eve of trial where disqualification would have worked a substantial hardship on client). We further note the testimony by appellee's counsel went to the issue of the contempt motion, which the magistrate granted in favor of appellant. *See Popa Land Co. v. Fragnoli*, 9th Dist. No. 08CA0062-M, 2009-Ohio-1299, ¶ 26 (noting that Prof.Cond.R. 3.7 "requires a court contemplate the prejudice to the opposing party while simultaneously considering the impact disqualification will have on the lawyer's client").

{¶ 78} Appellant's fifth assignment of error is not well-taken and is overruled.

{¶ 79} Under the sixth assignment of error, appellant asserts the trial court erred in awarding her only $3,500 in attorney fees to pursue the contempt motion. Appellant cites her testimony indicating she had made total payments of $12,650 for attorney fees. Noting that the magistrate found appellee presented no defense to the contempt motion, appellant argues appellee's behavior warranted an award of all fees she paid to address this matter.

{¶ 80} Under Ohio law, "[a] trial court may award reasonable attorney fees in post divorce proceedings upon a finding of contempt." *Dureiko v. Dureiko*, 8th Dist. No. 94393, 2010-Ohio-5599, ¶ 24, citing *McDaniel v. McDaniel*, 74 Ohio App.3d 577 (8th Dist.1991). This court's review of a trial court's decision regarding the grant of attorney fees is abuse of discretion. *Id.*

{¶ 81} The magistrate, in addressing the issue of attorney fees as to the contempt motion, noted appellant "did introduce a document containing a summary of fees she has paid to her attorney through January 18, 2017," and that "[h]er total fees through that date were $12,650.00." (Mag. Decision at 11.) The magistrate further noted, however, "[t]here was no breakdown * * * of what portion of those fees were accrued for prosecuting the Contempt action." (Mag. Decision at 11.) Noting that a trial court "can take judicial notice of fees that are reasonable to pursue a Contempt action," the magistrate found "the amount of $3,500.00 is reasonable and necessary for attorney fees to prosecute the Contempt action in this case." (Mag. Decision at 11.)

{¶ 82} Appellant filed an objection, asserting the magistrate erred in only awarding her $3,500 in attorney fees. In overruling this objection, the trial court found appellant

"failed to show that her legal fees, related specifically to her contempt action, exceeded $3,500." (Decision & Entry at 12.) Rather, the court observed, appellant provided "a summary of fees in the aggregate from her attorney which combined amounts expended in the prosecution of her Motion as well as [appellee's] Motion to Modify." (Decision & Entry at 12.) Noting that it had "no way to know what fees were expended vis-à-vis her Motion, because [appellant] provided insufficient evidence for its consideration," the trial court concluded the magistrate's award of $3,500 was "a reasonable amount to pay an attorney to pursue any contempt action." (Decision & Entry at 12.)

{¶ 83} The record reflects appellant submitted a document before the magistrate containing a summary listing six payments made to her attorney (Plaintiff's Ex. No. 16) totaling the amount of $12,650. A review of that document, as observed by both the magistrate and trial court, reveals no breakdown of the hours and/or fees attributable to the contempt motion. In the absence of such a breakdown of the fees incurred, we find no abuse of discretion by the trial court in finding the magistrate allocated an amount ($3,500) that was reasonable and necessary to prosecute the contempt motion and we therefore find no merit to appellant's contention that she was entitled to an award based on the total amount listed on the summary document.

{¶ 84} Appellant's sixth assignment of error is not well-taken and is overruled.

{¶ 85} Based on the foregoing, appellant's six assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is hereby affirmed.

*Judgment affirmed.*

TYACK and BRUNNER, JJ., concur.

_____