[Cite as *Loewe v. Loewe*, 2024-Ohio-323.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

DENISE LOEWE

    Appellee

    v.

MARK LOEWE

    Appellant

C.A. No.     30326

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DR 2016-04-1273

DECISION AND JOURNAL ENTRY

Dated: January 31, 2024

FLAGG LANZINGER, Judge.

{¶1}    Defendant-appellant Mark Loewe appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, overruling his motion to modify spousal support. This Court affirms.

I.

{¶2}    Mark and plaintiff-appellee Denise Loewe were married in 1987. One child was born during the marriage, who was emancipated before the divorce was filed. The parties divorced in 2017 after thirty years of marriage.  Mark and Denise reached a full divorce settlement, and the trial court incorporated the terms of their agreement into the divorce decree. In accordance with the agreement, the court ordered Mark to pay $5,500.00 per month, and half of all bonuses he received, to Denise in spousal support.  The court ordered that spousal support would continue until the death of either spouse, or until the court modified or terminated spousal support. The trial court retained jurisdiction over both the amount and duration of Mark's spousal support obligation.

{¶3}   On April 7, 2020, Mark filed a motion to terminate or modify his spousal support obligation because he was furloughed during the COVID-19 pandemic. Mark's furlough lasted from April 4, 2020, until June 6, 2020. While his motion remained pending, Mark stopped making spousal support payments. Though furloughed, Mark received unemployment income totaling a pre-tax amount of approximately $10,800. On September 29, the trial court scheduled a status hearing to address Mark's motion and issued an order requiring Mark to pay $27,500 in unpaid spousal support. At the hearing, Mark acknowledged that he had no valid court order or instructions to stop making spousal support payments.

{¶4}   Prior to his furlough, Mark worked for Penn National Gaming as Vice President of Racing Operation. His base salary was $200,000 per year, as well as an annual bonus each year based on the performance of facilities he operated. After the divorce, his bonuses approximated $48,000 per year. Mark returned to work at 90% of his pre-COVID base salary. Mark's employer resumed the pre-COVID salary on October 1, 2020.

{¶5}   Also on October 1, 2020, Mark submitted his resignation to his employer effective December 17, 2020. At the time of his resignation, Mark was 63 years old. On January 29, 2021, Mark filed his second motion to modify or terminate spousal support. His motion argued that the court should terminate or modify spousal support because he voluntarily retired and because of Denise's receipt of "income from various business interest in the form of passive and earned income." Mark again stopped payments for the second half of December 2020 through April 2022. He did not resume payments until after a court order on April 26, 2022.

{¶6}   The court held a hearing on both of Mark's motions to modify or terminate spousal support. Mark and Denise testified at the hearing.

**{¶7}** Mark testified that he had been employed with Penn National Gaming since February of 2008 and that he had been in the horse racing business for 42 years. Mark testified that he made the decision to retire because "on returning to work, * * * what was expected and what was needed for the company had changed dramatically." Mark testified that "there was more responsibilities, less pay." Mark testified that he was traveling significantly more. Upon returning from the furlough his expenses were capped to $500 weekly, which meant he far exceeded what he was allowed to expense. Mark testified that his new wife lived 390 miles from his place of work. Mark also testified about legislation recently passed which he believed negatively affected the long-term projections for his industry. Mark testified that he did not retire to avoid paying spousal support. He testified, "I felt it was time to take care of myself and my wife and move forward with our lives together, and that is the basis for my retirement."

**{¶8}** Mark further testified that since retiring he had lived off his savings. Though eligible to withdraw from his 401k and to receive social security, he had chosen not to do so. He owns his home and has no mortgage. Mark owns his car. Mark testified that his monthly expenses include a phone bill, car insurance, groceries, and $800 per month in health insurance. Otherwise, "[w]e are very cautious with our money."

**{¶9}** Denise also testified, while providing corroborating exhibits, that Mark has continued to stay involved in the horse racing industry since his retirement. Mark continued to work with his new wife, including buying and selling horses.

**{¶10}** Denise testified she worked part time as a subcontracted bookkeeper, earning $1,000 a month. Additionally, Denise testified that she had passive income from businesses she inherited in 2014. Denise owns her own home in Colorado, which she purchased for $360,000 and

which had a mortgage balance of $275,000. She also testified that she pays $650 in health care premiums a month with an $8,500 deductible.

{¶11} The trial court granted Mark's first motion to modify spousal support throughout the periods when his income was reduced during the COVID pandemic. In granting the motion to modify spousal support, the trial court reduced Mark's spousal support obligation during his furlough period. The court increased spousal support to 90% of his pre-COVID obligation while he earned 90% of his pre-COVID salary. Upon return of Mark's pre-Covid salary, the court ordered Mark to resume paying spousal support in the amount agreed upon in the divorce decree.

{¶12} The trial court denied Mark's motion to modify or terminate spousal support following his voluntary retirement. When denying Mark's motions to terminate spousal support, the trial court found that Mark retired with the intention of circumventing spousal support and that he was voluntarily underemployed. Mark now appeals raising three assignments of error for our review.

II.

### ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED WHEN IT IMPUTED PRE-RETIREMENT INCOME TO HUSBAND FOR SPOUSAL SUPPORT PURPOSES AFTER HIS RETIREMENT.**

### ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED WHEN IT REFUSED TO CONSIDER WIFE'S INCOME FROM HER FAMILY BUSINESSES IN DETERMINING THE APPROPRIATE AMOUNT OF [SPOUSAL] SUPPORT.**

{¶13} In his first assignment of error, Mark asserts that he was not voluntarily underemployed, and the trial court should not have imputed his pre-retirement income for calculation of spousal support. Mark argues it was economically sound for him to retire, he had

compelling reasons to retire, and he did not retire for the purpose of defeating his spousal support obligation. Mark also asserts his voluntary retirement at age 63 is an appropriate retirement age. In his second assignment of error, Mark argues that the trial court erred when it refused to consider Denise's income from her family businesses in determining the appropriate amount of spousal support. We disagree.

{¶14} A trial court's decision regarding the modification of spousal support is reviewed for an abuse of discretion, which requires that the court's decision was arbitrary, unconscionable, or unreasonable. *R.O. v. P.O.*, 9th Dist. Summit No. 28929, 2018-Ohio-2587, ¶ 6, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶15} "[Revised Code] Section 3105.18(E) provides that an award of spousal support may only be modified when the trial court determines that either party has experienced a change in circumstances and, with respect to a divorce, when the decree specifically authorizes modification." *DiPalma v. Whipple*, 9th Dist. Summit No. 30358, 2023-Ohio-1023, ¶ 11. "[A] change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses," but the change must be "substantial" such that "the existing award [is] no longer reasonable and appropriate." R.C. 3105.18(F)(1)(a). "In addition, the change in circumstances must not have been considered as a basis for the existing award of spousal support, whether or not it was foreseeable." *DiPalma* at ¶ 11, citing R.C. 3105.18(F)(1)(b). "[I]f the court finds a change in circumstances, it may then determine the appropriateness and reasonableness of the existing award." *Barrows v. Barrows*, 9th Dist. Summit No. 21904, 2004-Ohio-4878, ¶ 7.

{¶16} Here, Mark alleges that his voluntary retirement was a substantial change of circumstances that made the existing award no longer appropriate. "Retirement, whether voluntary

or involuntary, may constitute a substantial change in circumstances unless it was undertaken early with the intention of circumventing spousal support obligations." *DiPalma* at ¶ 12, citing *Stevens v. Stevens*, 2d Dist. Montgomery No. 27761, 2018-Ohio-2662, ¶ 23. "If the spouse retires with the intent of defeating the spousal award, the retirement is considered 'voluntary underemployment,' and the spouse's pre-retirement income is attributed to him." *Koch v. Koch,* 9th Dist. Medina No. 03CA0111-M, 2004-Ohio-7192, ¶ 21.

{¶17} In its order, the trial court concluded "[Mark] retired for the purpose of avoiding his spousal support obligation to [Denise]." After finding that Mark retired to circumvent his spousal support obligation, the trial court concluded that Mark was voluntarily underemployed. The trial court further concluded that because Mark was voluntarily underemployed there was no change of circumstances to support recalculating Mark's spousal support obligation.

{¶18} To determine if a spouse has retired to circumvent spousal support obligations, trial courts consider multiple factors including age at the time of retirement, "age at the time of divorce; the time between the spousal support award and the retirement * * *[;] medical reasons for retiring; the economic justifications for retiring * * *; the validity of concerns over continued employment; and the assets from which spousal support could continue." *Manley v. Manley*, 7th Dist. Columbiana No. 19 CO 0023, 2020-Ohio-1365, ¶ 31; *see also Ogle v. Ogle,* 10th Dist. Franklin No. 17AP-560, 2018-Ohio-5141, ¶ 22 ("early retirement can be considered an involuntary decrease in a person's salary where the party demonstrates that it was economically sound to take an early retirement"), *see also Haase v. Haase*, 64 Ohio App.3d 758, 765 (8th Dist.1990) (retirement because of aggravated health problems was an appropriate change in circumstances).

{¶19} Here, Mark had no significant health reason for leaving his employment. The record reflects that Mark continued to participate within the racing industry after his voluntary retirement.

Mark's asserted belief that the racing industry would soon change was speculative and irrelevant to his ability to continue to earn an income until those changes went into effect. Mark's letter of retirement was submitted the day his income returned to pre-COVID amounts. Additionally, though Mark had resources available to pay Denise spousal support, he ceased paying Denise without court authorization, twice. Based upon a review of the record, we cannot say the trial court abused its discretion when it determined that Mark retired to circumvent his spousal support obligation.

{¶20} Given that the trial court found Mark had retired to circumvent his spousal support obligation, the trial court concluded he was voluntarily underemployed. *See Koch* at ¶ 21. Because the trial court found Mark was voluntarily underemployed, the trial court concluded that there was no change of circumstances. *See id.* Without a change in circumstances the trial court could not modify or terminate the original spousal support award. *See Dipalma* at ¶ 11. The trial court did not abuse its discretion when it did not modify Mark's spousal support obligation.

{¶21} Additionally, Mark argues that age 63 is an appropriate age to voluntarily retire. Age alone is not the determinative factor. As this court has stated previously, "[r]etirement, whether voluntary or involuntary, may constitute a substantial change in circumstances unless it was undertaken early with the intention of circumventing spousal support obligations." *Id.* at ¶ 12. As such, a trial court must determine whether a party retires with the intent of defeating a spousal support award, and age is merely a factor in considering that question. *See e.g.*, *Manley*, 2020-Ohio-1365, at ¶ 1 (the court rejected husband's request to modify support at age 62 when eligible for full retirement, and found 66 as Appellant's full retirement age); *Smith v. Smith*, 1st Dist. Hamilton Nos. C-140391 and C-140408, 2015-Ohio-2258, ¶ 23-24 (the court permitted Husband's retirement at age 55 due to management issues and health issues interfering with his ability to

perform his job); *Ogle*, 2018-Ohio-5141, at ¶ 37 (the court ordered a reduction of spousal support due to Husband accepting a voluntary retirement option which enhanced his retirement benefits, even though Husband had not yet reached age 65).

**{¶22}** In his second assignment of error, Mark makes two arguments (1) that his retirement is a change of circumstances and therefore the court must consider Denise's income when calculating a new spousal support value, and (2) Denise's income from her inherited businesses has changed since the divorce decree which constitutes a substantial change of circumstances for purposes of modifying spousal support. We disagree.

**{¶23}** With regard to Mark's first argument, this Court has already determined that the trial court did not abuse its discretion when it concluded that Mark's voluntary retirement did not constitute a substantial change of circumstances. While Mark alleges that the trial court should have considered Denise's income in the calculation of spousal support, his argument erroneously presumes a substantial change of circumstances has occurred and focuses on errors in calculation. Without finding a substantial change of circumstances, the trial court could not modify the original spousal support order.

**{¶24}** Regarding Mark's second argument, we observe that Mark does not point this Court to any caselaw or develop a cogent argument supporting his contentions that Denise's income constitutes a substantial change in circumstances. An appellant bears the burden of affirmatively demonstrating the error on appeal and substantiating his arguments in support. *Angle v. W. Res. Mut. Ins. Co.*, 9th Dist. Medina No. 2729-M, 1998 WL 646548, *1 (Sept. 16, 1998); *Frecska v. Frecska*, 9th Dist. Wayne No. 96CA0086, 1997 WL 625488, *2 (Oct. 1, 1997). *See also* App.R. 16(A)(7) and Loc.R. 16(A)(7). "As this Court has repeatedly held, '[i]f an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out.'" (Alterations sic.) *In*

*re Guardianship of Jenkins*, 9th Dist. Summit No. 29981, 2022-Ohio-1043, ¶ 10, quoting *King v. Divoky*, 9th Dist. Summit No. 29769, 2021-Ohio-1712, ¶ 50.

**{¶25}** Based upon a review of the record, we cannot say the trial court abused its discretion when it did not modify spousal support. Mark has not shown a substantial change of circumstances or how the trial court's ruling was unreasonable, arbitrary, or unconscionable. Upon review of the trial court's award, we find that the trial court's ruling was reasonable under the circumstances.

**{¶26}** Mark's first and second assignments of error are overruled.

### ASSIGNMENT OF ERROR III

**THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND UNSUPPORTED BY THE RECORD.**

**{¶27}** In his third assignment of error, Mark argues that the trial court's finding that he retired to avoid his spousal support obligations and therefore was voluntarily underemployed is against the manifest weight of the evidence. In determining whether a finding is against the manifest weight of the evidence in a civil case, we apply the following review:

> When the manifest weight of the evidence is challenged, "[a]n appellate court conducts the same manifest weight analysis in both criminal and civil cases." *Ray v. Vansickle*, 9th Dist. Lorain Nos. 97CA006897 and 97CA006907, 1998 WL 716930, *1 (Oct. 14, 1998). "'The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988). Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." *Id*.

*Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001).

**{¶28}** Moreover,

Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. [*Thompkins* at 387]. Further when reversing a [judgment] on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. *Id*.

*State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. "This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the appellant and against the judgment." *Kolenz v. Kolenz*, 9th Dist. Summit No. 26700, 2013-Ohio-3605, ¶ 12 citing *Thompkins* at 387.

{¶29} At the hearing, Mark testified that (1) he did not retire to avoid paying spousal support, (2) he had been in the horse racing business for 42 years, (3) after returning from his furlough, there were more responsibilities with less pay, (4) the circumstances of his employment left him feeling it was time to take care of himself and his new wife, (5) since retiring he has lived off his savings, (6) though eligible to withdraw from his 401k and to receive social security, he had chosen not to do so, and (7) because he is cautious with his money, he can afford to live without taking an income.

{¶30} Mark also testified that he did not pay spousal support until ordered to do so by the court during the period when he was furloughed. He did not make payments even though he received unemployment income. After retiring, he did not make spousal support payments and only resumed payments following a court order in April 2022. No evidence was provided to establish that Mark had a significant health reason for leaving his employment. Additionally, Mark continued his involvement with the horse racing industry, including the purchase and sale of horses.

{¶31} Interpreting the evidence consistent with its order, the trial court could reasonably infer that Mark retired to circumvent his spousal support obligations to Denise. While Mark claims

that he did not retire to avoid paying spousal support, the trial court was not required to accept his explanation. *See State v. Mattle*, 9th Dist. Summit No. 30262, 2023-Ohio-1352, ¶ 22. When this court considers the weight of the evidence, "we are always mindful of the presumption in favor of the trial court's factual findings. [T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." (Internal quotations and citations omitted.) *T.S. v. R.S.*, 9th Dist. Summit No. 27955, 2017-Ohio-281, ¶ 4. The trier of fact is free to believe "all, part, or none of the testimony of any witness who appeared before it." *Bradley v. Cage*, 9th Dist. Summit No. 20713, 2002 WL 274638, *2 (Feb. 27, 2002). A review of the record indicates that this is not the exceptional case, where the evidence weighs heavily in favor of Mark.

{¶32} Mark's third assignment of error is overruled.

## III.

{¶33} Mark's assignments of error are overruled. The judgement of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

CORINNE HOOVER SIX, Attorney at Law, for Appellant.

JOHN M. DOHNER, Attorney at Law, for Appellee.